UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOHN and JOANNE SIMS            :        CA NO. 08-612-RET-SCR
                               :
VERSUS                         :        JUDGE TYSON
                               :
THE DOW CHEMICAL COMPANY,       :        MAG. JUDGE REIDLINGER
ET AL.

## <u>PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S<br>REPORT AND RECOMMENDATIONS</u>

MAY IT PLEASE THE COURT:

Plaintiffs Jo Ann Sims and Brent Sims respectfully submit the following Objections to the Magistrate's Report and Recommendations ("Report") denying their Motion to Remand this case.  Initially, as reflected on the attached Affidavit (attached as Exhibit A), undersigned counsel must admit that he is well aware of the Magistrate's necessary reliance on briefs file by *both* parties. However, as a result of a last minute "computer issue" *and,* significantly, counsel's own ignorance of the fact that "supplemental" memoranda are not allowed in federal court, our last minute *original* memorandum *was* correctly characterized by defendants as little more than "skeletal" and must be at least partially to blame for the Magistrate's errors as set forth below.

However, for the reasons, set forth more fully below and in the attached Affidavit (attached as Exhibit A) and Exhibits, the fact remains that this Court does *not* have diversity jurisdiction and that the Report is also  the foreseeable result of the Magistrate's understandable, but mistaken, reliance upon uncorrected, but false, misleading, and conclusory representations and material

- 1 –

omissions of fact and law made throughout defendant' filings with the Court in the course of what, with all respect, plaintiffs can only characterize as defendants "*fraudulent removal*" of this case.

**(1)     Even if the findings and conclusions expressed in the Report were completely correct, the Magistrate erred in not recognizing  that *its own holding* necessarily *compelled* a holding that fraudulent joinder had *not* been established under the "<u>Common Defense</u>" Doctrine adopted in *Smallwood***

This objection is based upon:  **(a)** The Magistrate's finding that no viable cause of action in intentional tort or even negligence existed against the *Louisiana* executives *and*  **(b)***The fact that plaintiffs' non-viable intentional tort claims against the Louisiana residents are virtually identical to the claims made against the Michigan residents*  it necessarily follows that **(c) <u>the deficiency the Magistrate found with regard to the claims asserted as against   20 Louisiana</u> executives based in Plaquemine *<u>would apply equally</u>*, if not more <u>so</u>, to bar the   *identical* claims made against <u>the few *Michigan* residents</u> based hundreds of miles away from Plaquemine**.

**(2)     The Magistrate Erred In Piercing The Pleadings Based Upon A Failure To Appreciate That What It Has, In Effect, Concluded That Plaintiffs Extremely Viable Negligence Claims Against Managerial And Upper Level Safety Personnel Were Brought As No More Than A Mere Pretext To Sue Dow And A Few Of Its Scientists From Michigan *in  Intentional Tort***

Of course, it is not unusual – indeed, it is to be expected - that <u>a Federal Court might view with some skepticism a *<u>negligence</u>* claim brought against a *<u>diverse</u>* party</u> that could only be brought in state court *only* because of its joinder with <u>an *intentional tort* claim against a *non-diverse* party</u>. (See, for example

*Bankston v BASF*[1], inexplicably cited without discussion in Dow's brief and discussed below).

However, *for the same reason* that this Court might, well consider a *negligence* claim against a diverse defendant tethered to state court only by a *intentional tort* claim against a Louisiana domiciliary to be dubious, even on its face, my respectfully suggest that **a claim made by a removing defendant that an *intentional tort claim* brought against non-residents has only been brought against it as a result of its fraudulent joinder with simple *negligence claims* against Louisiana residents ought to be viewed with <u>equal</u> skepticism**. After all, <u>there is not a single reported toxic exposure case in this State in which an intentional tort claim has ever been successful</u>. On the other hand, examples of successful (executive officer) negligence toxic exposure cases are legion.

While it may not be *that* uncommon for an executive officer negligence case to be coupled with a, shall I say, "*less viable*[2]" intentional tort claim against

---

[1] *Bankston v. BASF*, 827 F. Supp. 1239, 1241 (M.D. La. 1993).  (In *Bankston,* the plaintiffs made garden variety *negligence claims* **against a non-resident** that were  tethered to state court <u>only by an (apparently) near impossible to prove  **intentional tort claim**</u> against a **Louisiana** resident <u>(of a type that has never been successful in the history of Louisiana's jurisprudence)</u> i.e., the situation in ***Bankston* was the precise *opposite* of the situation presented by *this* case** - in which **defendants,** albeit without coming out and saying so (presumably because the very idea is so preposterous on its face), **are in fact arguing that** <u>the *true* object of plaintiffs' garden variety **negligence claims against resident** defendants </u>(at plaintiffs worksite, with the most direct relationship with, and employment related duties to, Mr. Sims *imaginable*) <u>is, *not really to obtain a judgment in negligence against co-workers directly   responsible for his safety,*</u> but rather only in order **to tether to state court *a near impossible to prove  intentional tort claim*** <u>(of a type that has *never* been successful in the history of Louisiana's jurisprudence.)</u>

[2] In State Court, such claims are often made to avoid the loss of a wrongful death claim that cannot be asserted against executive officers. Such "routine" intentional tort claims rarely survive the pleading stage and, to plaintiffs' knowledge have never survived Summary Judgment anyway,

an employer <u>in order to defeat diversity</u>,  it is important to appreciate that this is not the situation in this case. In fact, <u>the situation is exactly the *opposite* in the present case</u>: In this case <u>defendants *necessarily* claimed</u> (although they seem to have  avoided ever saying so – it's so patently absurd) <u>that I have bought **negligence** *claims against* 15 *managerial and safety employees at Dow's Plaquemine facility   solely* **as a fraudulent pretext to do what? Bring an *intentional tort* claim against their employer**</u>?

**(3)    In view of the applicable jurisprudence (discussed in more detail in the attached Affidavit), the Magistrate erred in failing to recognize the patent absurdity of the unstated premise for defendants' fraudulent joinder claims.**

This premise, that plaintiffs believe it is completely fair to characterize as "absurd," may be "briefly" stated as follows: <u>The very *notion*  that, these plaintiffs, any plaintiffs,  would ever, under any conceivable circumstance, bring pre-1976 based executive officer **NEGLIGENCE** CLAIMS</u> against 20 executive officers who were specifically alleged to be responsible  for safety at the decedents' own workplace under La. RS 23:13 prior to October 1, 1976 (negligence claims of a type that can *never* be shown to have *ever* been held *not* to state a cause of action *or* even to have been unsuccessful after trial on the merits[3]) <u>as no more than  a fraudulent pretext to bring an *INTENTIONAL TORT CLAIMS*</u> against a single employer and 5   executive officers based  in Michigan (intentional tort claims  of a type that have only been held to state a cause of action on one

---

much less ever get to the jury, much less survive appeal. Again, no intentional tort claim that has ever made it to a jury, so, of course, no such claim has ever been reported.

[3] Except for Smith v Dow, in which, as will be discussed in plaintiffs' objection, a plaintiffs' verdict was reversed on appeal as what can only have been the result of misrepresentations Dow made in the course of defending the case.

– 4 –

occasion in the history of this state[4] and  can never to be shown to  have been successful after trial on the merits  even once - *even when brought against parties actually employed at plaintiffs workplace*).

Now that we have "*briefly*" stated it, let's try it another way - in the form of a question - because it is very important: <u>What lawyer in his right mind would *ever* use **negligence** claims against the 20 superiors from his own plant in Plaquemine solely in order to make exclusively intentional **tort** claims against his employer and a few executives based up in Michigan</u>? It is respectfully submitted that, even at first blush, this honorable Court will immediately recognize that this is indeed a patently illogical and far more than counterintuitive premise: *It is in fact absurd*.

No lawyer in this state has *ever* been successful on an intentional tort claim. On the other hand, with the single exception previously stated, there is not a single reported case in the entire well developed executive officer jurisprudence of this state in which what plaintiffs will, for convenience, define in plaintiffs 2nd objection, as a "*Real*" executive officer case has ever been unsuccessful against at least one of the executive officer defendants.

The  Magistrate's failure to appreciate this absurdity obviously resulted on its uncritical analysis  of defendants' *own* "*artful pleadings*"  - that failed to even *characterize* the case they removed as involving **exclusively** intentional tort

---

[4] Ford v Elsbury

claims against a Dow and a few scientists  from Dow's Michigan headquarters[5]

and as involving **only** **three intentional tort claims but twenty pre-1976  based**

**negligence claims** against the 20 upper level managerial and safety personnel

from Mr. Sims' own plant in Plaquemine. Plaintiffs strongly suspect that, even

now, as a result of defendants' refusal to accurately characterize the true nature

of the claims in this case[6,] the Magistrate is completely unaware that he has, in

effect, found that these latter negligence claims have been brought as no more

than a fraudulent pretext to file the former intentional tort claims *and* that if his

Recommendations are upheld, <u>it will be the first time a petition in such a case</u>

<u>has ever been held not to state a cause of action in the history of this state.</u>

 **(4)    The Magistrate erred in not finding the removal itself to be defective (See Report, pp. 7-8) <u>because the removing defendants failed to attach two</u> <u>sets of discovery served *with the petition.*</u>**

Through proper service of *process* under the Louisiana Code of Civil

Procedure.  Without getting in over my head, we believe this is referred to as

---

[5]  Although, in this memorandum, plaintiffs *do* characterize the claims against the non-residents as lying *exclusively* in intentional tort*, this refers only to the executives *based in Michigan.* In fact, near the time we completed writing this memorandum, we noticed there *are* two negligence claims against two executive officers whose alleged negligence occurred exclusively while they *were* based at *Plaquemine,* but who apparently moved out of state afterwards. So it might be more accurate, if more clumsy, to say that the claims against the non-residents *based in Michigan at the time their alleged misconduct occurred* lie *exclusively* in intentional tort. In any event, the common defense rule clearly applies since the negligence claims asserted against these two no-*longer*-residents are no less deficient in any respect than are the identical claims against their former colleagues from Louisiana.

[6]  As well as plaintiffs' computer failure and personal failure to appreciate the federal rule prohibiting supplemental brief described in the introduction – **but also based   defendants' refusal to distinguish the transparently fraudulent cases they have** **exclusively,** **and, plaintiffs respectfully suggest,** ***misleadingly,***  **cited** to the Magistrate as authority  (referred to as "Latter Day *Canter"* cases for reasons explained in plaintiffs 3rd objection) involving negligence or even strict liability <u>claims brought by *non-employees*</u> who, unlike Mr. Sims, are *free* to sure non-resident companies like Dow – *in federal Court,* but are **not** owed the onerous obligations imposed on employers by LSA RS 23:13 **without distinguishing them from cases like that** **brought  by Mr. Sims** ( referred to in our 3rd objection as "*Real*' executive officer cases), that is, <u>claims brought by employees</u> based upon the alleged decades long negligent violation  of LA RS 23:13 that can only be brought in state court and, unlike the third parties  in the "latter Day Canter" cases are **barred** from suing  Dow for anything other than intentional tort.

"mesne" or "intermediate" process). The distinction should not therefore apply since the term process is not limited to "original process." The Magistrate inaccurately distinguished the cases cited in plaintiffs' Motion to Remand as involving the failure to attach a summons, process that that is served in the same manner as was plaintiffs' petition and discovery.

**(5)     In passing on plaintiffs' claims of inadequate Notice, the Magistrate erred in completely failing to address plaintiffs' very significant claim that the Notice of Removal itself did not in fact provide plaintiffs' with any true or meaningful NOTICE of the legal or factual basis for their claim of fraudulent joinder, in violation of plaintiffs' right to due process, and further erred in failing to find the Removal Notice itself to be defective as result. (See Report, pp. 7-8)**

Plaintiffs admit defendants' first ground for removal (Notice ¶ 12(b)-(g) that *also* appears to have been accepted by the Magistrate, does contain "facts," that, as shown in the attached Affidavit (attached as Exhibit A) and in plaintiffs objections, these facts are not only false or misleading in their entirety, but are, legitimately, irrelevant since they serve no legitimate purpose than to serve as the pretext for defendants', apparently successful argument for the application of the doctrine of "judicial estoppel"[7] to *plaintiffs.* These misrepresentations, set forth in the attached Affidavit (attached as Exhibit A), all relate to plaintiffs' lawyers' relationship with a single expert in litigation that occurred many years ago, and do not have anything to do with the plaintiffs themselves, who have never even filed a lawsuit before this one.

One should only have to compare plaintiffs' petition with Defendants' Notice of Removal (especially in view of the applicable jurisprudence discussed in plaintiffs objection) to see that it gives absolutely no information concerning

---

7  A Doctrine that is not accepted in Louisiana.

any factual basis for <u>the second, apparently most important, basis for removal</u> (¶ 12(h)-(j)) that was clearly adopted by the Magistrate. Instead, as discussed in plaintiffs' other objections, the second part of defendants' Notice is comprised entirely of completely conclusory assertions and is literally "fact free." Further, these three paragraphs of argument *seem* to be based upon uncited and undiscussed criteria for vagueness and ambiguity that are not at all consistent with the "liberal interpretation" that plaintiffs' allegations should have been afforded.

**(6)     The Magistrate erred in adopting (if it did so adopt) defendants' argument that the citizenship of 16 of the 20 Louisiana executive officers who were not named as direct defendants (but merely named as insured tortfeasors) should not be considered in determining jurisdiction based on their assertion that (*amended*) LSA-R.S. 22:1269 does not allow a direct action against an insured unless the insured is also named as a party defendant.**

That amendment is, by its own terms and simply as alleged in the petition, *not* retroactive. As a result, it does not apply to plaintiffs executive officer claims that, necessarily and as alleged, accrued before 1976. (Petition, ¶ D(5)). [8] If the Court does not remand this case right away, it should at least refer it back to the Magistrate for reconsideration.

**(7)     The Magistrate erred in finding  (Report, p. 12) that plaintiffs'' petition contains no allegations that *"Plaintiff <u>relied</u> on, and continued to work at Dow because of any specifically identified false or misleading documents or information received from any Dow executive officer"*.**

This finding is incorrect because **(a)** plaintiff <u>*does*</u> indeed contain allegations of detrimental reliance; **(b)** even if such allegations <u>*were*</u> absent such

---

[8] "**[N]one** of variations of common-law doctrines of res judicata, <u>including</u> collateral estoppel or <u>*"judicial estoppel"*</u> … apply in Louisiana "*Ugulano v. Allstate Ins. Co.*, 367 So.2d 6 (La.1978) "[J]udicial estoppel is no longer applicable in Louisiana. *Doyle v. State Farm*  414 So.2d 763 (La.1982)

specific allegations should have been inferred by the Court from the allegations that *were* made; **(c)** The studies referred to *are* as adequately identified in the petition as is possible;  and **(d)**  Plaintiffs *never* alleged that the at least 7 secret epidemiologic studies demonstrating an excess incidence of a wide variety of cancers and in which Mr. Sims was a totally unwitting participant *were* misrepresented or even disclosed  to him at all.  O*n the contrary,  plaintiffs* alleged that the very existence,  as well as *the results,*  of such studies (and other similar studies) were kept secret from him and *not* revealed to him; and **(e)** The implication in the Report that misleading information (such as information given at safety meeting that said nothing about the carcinogenic risk, etc.) needs to come *directly* from an executive officer himself is incorrect – especially where plaintiffs alleged the executives were directly *responsible* for the entire program that included such misleading information (e.g., safety information devoid of any reference to cancer), that was provided to Mr. Sims.

**(8)    The Magistrate erred in finding fraudulent joinder by failing to even address allegations that directly relate to the liability of the Louisiana executive officers.**

Neither defendants nor the Court have ever disputed the truthfulness of plaintiffs' extremely relevant  allegations that the multiple epidemiologic cancer *studies* of Mr. Sims and other workers exposed to vinyl chloride that consistently demonstrated excess brain cancer rates or that they were kept *secret* from him and the other unwitting subjects of such studies.  Defendants never, and could not, deny this.[9]   To do this, though, they had to simply ***ignore***:  **(1)** OSHA's

---

9 Instead **they argued, somewhat cynically, it seems to us, that they didn't *have* any to warn Mr. Sims about anything in the first place.**

specific risk communications requirements for vinyl chloride (29 CFR 1910.1017(j)(ii)); *and* **(2)** universally accepted principles of informed consent with regard to at-risk subjects of scientific studies, *and* LA RS 23:13; *and even* **(3)** What can only be referred to as any fundamental notion of common decency.

Neither have defendants denied nor the Court at all addressed plaintiffs allegations (as confirmed by his *full* testimony) that <u>for decades he was exposed almost all day every day to levels of vinyl chloride 4,000 times OSHA's present exposure limits</u> (since 1974) for this substance for decades.

Nor have defendants denied or the Magistrate addressed plaintiffs' allegations that <u>the respirators used at Dow Plaquemine used charcoal and were known to be inadequate</u> for vinyl chloride at any level, much less the extremely high levels that existed (at times according to Mr. Sims' testimony in "clouds" and even at levels high enough to cause intoxication).

Nor have defendants denied or the Magistrate addressed plaintiffs' allegations that <u>the atmospheric monitoring methods used</u> at Dow Plaquemine that employed charcoal as an adsorbent media <u>had a very *convenient* defect</u> (from the point of view of the intentional tortfeasors) or (from the point of view of the negligent tortfeasors) a <u>hidden</u> defect that would have been revealed had validation studies for the accuracy of those monitoring methods been conducted as required by law or good practice.

**_Incredibly_, the Magistrate (Notice, p. 12) somehow *seems* to have agreed with defendants** since, while *not addressing* the ***accuracy*** of plaintiffs' allegations with regard to the secret epidemiologic studies (the only of the subject

just identified that he did address), the Magistrate erred in finding that plaintiffs failed to **_allege_** the executive officers at Mr. Sims plant *"had a specific duty to communicate with Sims about, or actually provide him with, the results of any scientific studies concerning exposure to vinyl chloride."* (Report, at p. 12). **_But see_** Petition at   ¶¶  13 (f)-(l), ¶¶  15 (e)(f)(i)  (j)(k), ¶¶  18(a)(c)(e)(j)(k)  for the supposedly "missing" allegations. In any event, this duty should have been reasonably *inferred* even from whatever allegations the Magistrate *was* referring to in its Notice (at Report, pp. 8, 9, 11)

**(9)     The Magistrate also erred in his finding that plaintiffs failed to allege that "*Plaintiff relied on, and continued to work at Dow because* of *any specifically identified false or misleading documents or information received.* [Directly? Does the Magistrate really think *this* is necessary?] *from any Dow executive officer"* (Report, at p. 12).**

Plaintiffs' Petition at ¶¶ 21, 23, and especially ¶ 22 supplies the supposedly "missing" allegations.

**(10)   The Magistrate erred in finding that the "*generic*" or "*conclusory allegations in the plaintiffs' petition do not establish that the executive officers had any knowledge of a harmful condition sufficient to create a personal duty owed to Sims.* (Report, p. 12)**

The knowledge alleged could hardly be more specific (See Petition, ¶¶ 12(b)(g)(i), 16(i) 18, 22, 23, 24(f)(l), 25, 27) and should have been inferred from whatever allegations the Magistrate was referring to as conclusory, even if they were merely conclusory.  We do not even know what the Magistrate meant by this finding.

**(11)   The Magistrate erred in its findings with regard to plaintiffs' allegations by failing to even address plaintiffs' _negligence_ claims.**

Plaintiffs' negligence claims allege what can fairly be considered the breach of a fundamental duty of any person responsible for men working with dangerous chemicals – <u>the duty to keep abreast of knowledge</u> with regard to relevant scientific issues as well as plaintiffs' allegations of what is, essentially, the executive officers <u>*failure* to know what they were doing</u> in certain specified areas.[10] (See Petition, ¶¶ 13(f)(g)(h)(j), 16 (a)-(g), (i)(j).)

**(12)  The Magistrate erred in exclusively relying on the inapplicable so-called executive officer jurisprudence cited, without discussion, in its Report (*Guillory v. PPG Industries, Inc.,* 434 F.3d 303 (2005) and *Freeman v. Witco and  Corp.,* 984 F.Supp. 443 (E. D. La. 1997)), as well as in *all* of defendants' filings with the Court, that also were cited without discussion (*Bankston v. BASF*,  827 F. Supp. 1239, 1241 (M.D. La. 1993); *Ford v Elsbury* 32 F.3d 931 (5th Cir., 1994); *Hornsby v. AlliedSignal, Inc.*, 961 F. Supp. 923 (M.D. La. 1997) and *Guillory v PPG*).  They are all, without a single exception11, what plaintiffs properly characterize as factually and legally**

---

[10] <u>Neither defendants nor their submissions nor the Magistrate address, for example</u>: (1) plaintiffs repeated allegations of knowledge concerning epidemiologic, toxicological, and other scientific studies concealed or negligently not revealed to Mr. Sims; (2) the fact the  omnipresent odor of vinyl chloride in Mr. Sims' workplace indicated exposures at least 4,000 times higher than the exposure limit set by OSHA; (3) the one-side bias of charcoal based monitoring methods employed in his workplace (they consistently under estimated actual exposure levels); (4) the unsafe work practices employed there; (5) the inadequacy of the respirators used at Dow Plaquemine etc. (for example see   ¶¶ 22-27.)

[11] In their Opposition Memorandum, the Insurer Defendants do finally manage to cite two "Real" Executive Officer cases that, although having nothing to do with failure to state a cause of action, defendants apparently thought worth citing since in one of them some by not all of the alleged executive officers were dismissed of Summary Judgment (*Armentor v Fred C. Benton Industrial Repairs*, 349 So. 2d 367 4th Cir. 1977) and in the other one (*Smith v. Dow, 635 W.2d 325 (1st Cir. 1994))*, in which Dow actually prevailed -  although only by misleading the Court and perhaps opposing counsel by <u>claiming that the vinyl they manufactured was *not* vinyl chloride *but*</u> some supposedly distinct chemical called <u>*"methyl vinyl chloride*,"</u> which,  was patently false and no-one today will  deny it was since it was not only never manufactured, but  as a simple examination of Chemical Abstracts Service (CAS) or any chemical dictionary will show, <u>there simply is no such chemical</u> (an examination of a few patents indicates that, at best, it may be an obscure synonym (not  even listed is CAS) for a minor contaminant (at the part per million level) of  vinyl chloride per se. In fact, the discovery requests served with plaintiffs' petition that Dow failed to include with its other process when it removed the case would show requested detailed information about this apparent fraud upon the Court. (The 1st Circuit just went on and on in its opinion about how knowledge of one chemical's toxicity has no relevance to that of another chemical and reversed a $2,000,000 verdict for plaintiffs. The case was settled on terms very favorable to the plaintiffs before the Supreme Court had time to consider the plaintiffs' writ. So, although defendants may be fond of these cases, the only cases cited by defendants as "executive officer" cases (the Courts in those cases did not confuse the issue by referring to them as such), and the only cases

- 12 –

distinguishable *transparently fraudulent* post-1976 "<u>*Latter Day Canter*</u>" <u>cases</u>.

As explained in plaintiffs' objections, these "Latter day Canter" cases seem to universally arise from a single accidental chemical plant explosions or gas releases that  allegedly injured third parties like neighborhood residents or employees of independent contractors who - because they *are* third parties and not plant employees – are *not* barred, <u>as are employees</u>, from bringing far more viable claims *directly* against the non-resident plant owners themselves - If they were willing to bring them in federal court.  Once the distinction between real executive officers cases is recognized, it can readily be seen that only in these rare type cases can it truly be said that the plaintiffs are actually just suing employers to "get at" the employer in state court.  The reason for this is obvious: **Because <u>any "personal" negligence of any "executive officers"</u>, even if proven, <u>would be imputed to the plant owner anyway, the presence of such defendants</u> in these type cases totally is unnecessary and <u>*explainable only as the result of their fraudulent joinder*</u>.**

**(13)   The Magistrate erred in relying on *Bogner v. Airco, Inc.,* 2003 WL 24121083, (C.D.Ill. 2003) and mischaracterized plaintiffs' allegations of battery and intentional misconduct (Report, p. 12).  While not adding their negligence claim.**

Plaintiffs' allegations of battery and intentional misconduct are based on far more than epidemiologic studies anyway (see ¶¶ 18, 19, 22-27), but certainly was not remotely similar to *the fraudulent misrepresentation claim against 28*

---

that have anything to do with stating a cause of action in such cases are the transparently fraudulent  "Latter Day Canter" cases identified above.

*foreign manufacturers who never set foot on the employers' plant*[12] at issue in *Bogner.*

First, <u>this case has nothing to do with negligence</u> claims and, what's more, even the intentional tort claims are made against only three (living) Louisiana residents out of 15. Second, <u>we do indeed allege detrimental reliance</u> (Most specifically at Petition,¶ 22) *but <u>not</u> with regard to epidemiologic studies*, **since Mr. Sims was kept blissfully ignorant of *anything* about VCM's carcinogenicity,** and certainly was ignorant of the fact (not a fact denied, if not admitted by defendants) that he was an unwitting subject of at least 7 epidemiologic studies that, despite its sponsors' best efforts to corrupt it, nevertheless consistently demonstrated excess brain cancer in its subjects. Simply put, there is no issue of any *reliance* on these studies. They were kept secret from rank and file workers like Mr. Sims. He did, however, rely on safety meetings, doctor appointments, training programs, etc. that the Magistrate apparently did not consider that not only provided no information concerning the studies the Magistrate discusses, but was never told anything about vinyl's carcinogenicity *at all.*

**(14)    The Magistrate erred in making the obscure finding that : (1) "*merely listing … duties does not equate to  alleging a specific breach of a personal duty owed to the Sims*;  and further erred in making but somehow related subsequent finding that (2) "*the plaintiffs are essentially alleging the executive officers are liable based* [not "*solely*"?] *on the positions they held at Dow,*"** (Report, p. 11, question supplied

 We do say **the first finding** is "obscure," at least to plaintiffs,' since: (1) the statement that *duties* – "listed" or otherwise – are different than their *breach* is

---

[12] Indeed, the opinion itself reflects that **the intentional tort claims against Bogner's employer *were* found to state a cause of action.**

true enough, but what does it *mean?*; and (2) In what manner *can* multiple duties *be* alleged *other than* by "*listing*" them – "merely" or otherwise? Surely, these allegations must not each be made in separate paragraphs, or in complete sentences, or in some manner *other than* in a "list" in order to state cause of action?

In fact, <u>Plaintiffs *do* in fact make very specifically allegations as to the specific nature of the executives' delegated duties</u> in very specific manner (e.g., Petition, ¶ 13, etc. for duties;   ¶15,17 etc. for breach); ***Second,*** and almost incredibly – considering the Magistrate has, in essence, found that alleging a duty arising from employment somehow renders it *fatally* defective.   But, of course, **the entire *basis* for the both the *Canter* and *Cole* cases' finding of** **personal liability on the part of the executive officers involved *was*** **premised upon the breach of duties that most certainly arose only "*based*"** **[solely] *on the positions they held*" with their employer.** In fact, The first two criteria necessary to even *prove* a case based upon executive officer liability as set forth in *Canter* (and the premise for the remaining criteria) as correctly recited in the Magistrate's own Report  are as follows:

The court adopted the following criteria for imposing liability on individual officers or employees for breaching **a** duty arising ***solely*** [!] **because of the** **employment relationship**: (1.)"The...**employer** <u>owes a duty</u> of care... [and] (2.) This duty is <u>delegated by the...</u>**employer** to the defendant." (Report, p. 6, emphasis supplied)

*Whatever* these two particular findings mean, exactly, plaintiffs respectfully suggest that they would certainly be no reasonable basis for claiming plaintiffs counsel have done anything "fraudulent" or even "improper," in making their

allegations of *duty* (or of *breach*, if that's what the first finding is truly intended to mean) even if those allegations did not did not include ¶¶ 12, 13, 15, 17, 22-26. This obviously important finding is certainly no legitimate premise for the Court's conclusion that plaintiffs claims against the Louisiana executives (lying almost entirely in negligence) were made either fraudulently or even improperly.

**(15)    The magistrate erred in concluding that the *"[r]emoving defendants have demonstrated that the executives officers listed in the petition owed no personal duty to the plaintiffs or, assuming they did, such a duty had been properly <u>delegated</u> to subordinates.</u>*" (Notice, p. 11)**

In neither Defendants' completely conclusory Notice of Removal nor even in any of defendants subsequent memoranda: (1) Do defendants raise responsible delegation as an affirmative defense;13 (2) Do defendants prove the defense of responsible delegation;  (3) Do defendants so much as mention the *word* delegation in connection with this case;

**(16)    The Magistrate erred in concluding that the*" [r]emoving defendants have demonstrated that the executives officers listed in the petition owed no personal duty to the plaintiffs* (Notice, p. 11).**

As shown by plaintiffs' preceding objections, no such demonstration has been made. None of defendants' filings do more than *identify* the vast majority of the executive officers and defendants have failed to meet their burden of proof14 even with regard to the small minority of them that they *did* address specifically in

---

[13] And like status as a "statutory employer," this affirmative defense of delegation need not be negated by plaintiffs; rather it must be:  (1) specifically set forth as an affirmative defense; *and* (2) *proven* by defendants.

[14] For example, see discussion of objections in which plaintiffs' point out that defendants have not even denied the executive officers held the positions alleged *and* do not establish they did not have the duties alleged *and*  defendants further points out that have not so much as *mentioned* the issue of responsible delegation of their duties to responsible and qualified subordinates who might otherwise – if it is even conceivable – have been responsible for the complete absence of any real vinyl chloride safety program that even attempted to address the potent carcinogenicity of vinyl chloride that Dow  manufactured at its Plaquemine facility.

*any* form or fashion. The Magistrate did not address *any* of them. Finally, if these upper level managerial and safety personnel were not responsible for the near complete absence of *any* vinyl chloride safety program, who were?

**(17)   The Magistrate egregiously erred in its interpretation of *Smallwood v. Illinois Central Railroad Co.* and the application of its guidelines for the proper application of pierce the pleadings procedure in this case.**

The Magistrate's Report *correctly* states that the two types of fraudulent joinder are: "(1) actual fraud in the pleading of jurisdictional facts; *or* (2) inability to of the plaintiff to establish a cause of action against the non-diverse party in state court" *and* correctly states that "that the test in the latter situation is "whether the defendants have demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant,"

However, with all respect, as reflected in its misstatement of the *Smallwood* guidelines for piercing the pleadings, **the Magistrate completely *reversed* the Smallwood guidelines in its analysis of this case. The Magistrate misstated those guidelines as follows:**

   "The court may decide the question of whether the plaintiff has a **reasonable basis of recovery under state law** by employing a Rule 12(b)(6) Fed. R. Civ. Pro. analysis or **by piercing the pleadings** *and conducting a summary inquiry*" (*Report,* p. 6)

In fact**,** though**,  *Smallwood* stands for the exactly the *opposite* proposition** than that that set forth in the Magistrate's Report, i.e., that:

   "*Ordinarily*, if a plaintiff can survive a Rule 12(b) (6) challenge, there is no improper joinder. That said, there are **cases**, hopefully few in number, in which a plaintiff   has **misstated or omitted discrete facts** that would determine the propriety of joinder. **IN SUCH CASES**[15], the district Court

---

[15] i.e., *not* when the finding

may...**pierce the pleadings** and conduct a summary inquiry**.** (***Smallwood***, at 568, emphasis supplied).

As a result of the foregoing, since the Magistrate did not find - and could not have so found,[16] *actual fraud in the pleading of jurisdictional facts***,** it not only improperly   pierced- the-pleadings in this case, but necessarily   went to the (incorrectly  appreciated)  "merits"   of  the  plaintiffs  claims  by  considering defendants (one-sided, mischaracterized, and largely irrelevant) submissions"  in connection with their incredible claim that there was no  reasonable basis  for predicting that  plaintiffs might prevail in this case, without any claim or proof that the plaintiffs in this case **misstated or omitted any discrete facts** so as to constitute actual fraud in the pleading of jurisdictional facts.[17]

**(18)   As reflected by the authority referred to in its Report and as discussed in the attached Affidavit), the Magistrate clearly erred in failing to recognize <u>the crucial distinction in Louisiana's  jurisprudence between what plaintiffs' accurately characterize as</u>:**

**(A) "REAL"  EXECUTIVE OFFICER CASES**[18] that, although similar to this case both legally and factually were <u>never</u> cited as relevant authority by either the defendants or the Magistrate (relatively common - there are thousands – pre -1976[19] employee plaintiff cases based on Canter v Koehring <u>as applied in</u>

---

[16] Even defendants do not go so far as to suggest plaintiffs petition ***misstated or omitted discrete* facts** that *would* justify the Magistrate's decision to pierce the pleadings in this case.

[17] As we cannot emphasize enough, out of the thousands of "*Real*' executive officer cases that have been filed since *Cole* was deiced, there is not a single reported case in which such a case has ever been (at least totally) <u>un</u>successful after a trial **on the merits** (i.e.,<u> in every one of the many reported cases, the plaintiffs have been awarded damages against at least *some* of the alleged executive officers involved in them and those awards have been upheld on appeal.</u>

[18] Sometimes referred to hereinafter as "*Canter* <u>and</u> *Cole*" claims

[19] By "*pre-1976*" claims, we mean claims *accruing* before October 1, 1976 when *Canter* was legislatively overruled (at least in the context of *employee* claims), during which time the violation of LA RS 23:13 could actually result in the civil liability of an employers' executive officers - that it is *critical* to distinguish from, apparently,  universally  dubious [they never make sense *or* even succeed in any respect] *third party* claims against individual executives – claims along the lines

the context of an alleged long term breach of their employers' (necessarily delegated) extremely onerous duties[20] under LA RS 23:13 in Cole v Celotex in which **the ONLY viable negligence claims lie against executive officers[21] and NOT against the employer itself.  Because the employer is immune from such employee claims**).

It is the type of cases addressed in *Cole* that *are* commonly referred to as "executive officer claims"[22] - cases brought by employees that, although based on *Canter*, involve causes of action that accrued before October 1, 1976 when Canter  was legislatively overruled in the context of such employee claims, as occupational diseases; but became manifest after that date.  In complete contrast with the third party "Latter Day Canter" cases described below, **any executive officer negligence would NOT be imputed to an employer defendant** (because the employer is immune to employee negligence claims).  So it never is correct to assume this kind of lawsuit is some sort of devious way to avoid federal court.   The plaintiffs in this case have only intentional tort claims against

---

that that some plant manager is personally responsible for an isolated leak occurring out in the plant somewhere.

[20] The onerous nature of these obligations vis-à-vis occupational disease claims, *as well as* their viability, *as well as* fact that these obligations were, at least insofar as the jurisprudence reflects, uniformly ignored by employers before at least 1976, are all patent since, as we reiterate - perhaps too often - throughout this memorandum, not one published case indicates,  not only that no petition in any such case has *ever*  been held not to state a cause of action *at all* (much less on the grounds that  the universally employed "undifferentiated" collective references in "executive officers" in the petitions in such cases rendered them "*fatally vague*" as the Magistrate has effectively found in this case), but *also* indicates that not one such case  ever brought to trial has ever been (at least completely) unsuccessful on the merits.

[21] As we cannot emphasize enough, out of the thousands of "*Real*" executive officer cases that have been filed since *Cole* was deiced, there is not a single reported case in which such a case has ever been (at least totally) **un**successful after a trial **on the merits** (i.e., in every one of the many reported cases, the plaintiffs have been awarded damages against at least *some* of the alleged executive officers involved in them and those awards have been upheld on appeal.

[22] The type of "Latter day Canter" cases exclusively cited by defendants are commonly called "The Citgo case" or "the Fisherman's case" – **anything *but* an executive officer case.**

<u>Dow and its' Michigan scientists</u> now – and we will only have it if it does not get thrown out on a no cause of action – not the negligence claims.  There are hundreds if not thousands of claims; with allegations more vague than are plaintiff pending in Plaquemine now and defendants cannot show the Court one such case that has been thrown out on a no cause of action from Plaquemine or anywhere else.  This leaves the plaintiffs' pre-1976 based executive officer claims as the only viable negligence claims available and *not at all explainable only by their fraudulent joinder* with claims against the employer.  As a result, as a matter of law, unlike the so-called "Latter Day Canter" claims described below, virtually do NOT invite the Courts' use of a "pierce-the-pleadings procedure, as per Smallwood's guidelines.

These types of cases are not telling Dow anything it doesn't already know but we will be very lucky to keep Dow in Court on an intentional tort claim.  Yet *this* is the <u>viable</u> claim for purposes of the "common defense" rule?

**(B)** ***"LATTER DAY CANTER" CASES***[23] *like those <u>exclusively</u> cited by defendants and relied upon by the Magistrate (These type cases are relatively rare – have there possibly been more than a half-dozen? They are post-1976 non-employee claims brought by third parties who are not owed any duty under LSA RS 23:13.  Rather they are based solely upon a far-fetched but still literal interpretation of Canter but <u>not</u> Cole - in which, because the employer is not*

---

[23] Sometimes referred to hereinafter as "*Canter* <u>but not</u> *Cole*" claims

immune from such third party negligence claims.  Anyone can *sue* any plant manager any time, for just about anything the plant does if they want to.[24]

　　　In these almost universally, well, squirrelly, cases, a willing plaintiff might well sue 20 employees, but not for the same reasons because a lot of folks where he worked had done a lot of things wrong over a long period of time.  In short, these just <u>are not</u> real so-called "*executive officer cases*" (*the courts themselves confusingly refer to as such).*  They are not <u>brought by employees but by *third parties*</u> - such as persons residing near, or independent contractors working on, an employer's premises.  In these cases**,** *in complete contrast with "Real" executive officer cases*, because the employer is itself *not* immune, *any "executive officer" negligence that could possibly be would necessarily be imputed to the far more viable employer defendant anywa*y.  T<u>*he very presence of* executive officers as defendants in such third party cases is *totally unnecessary and thus* explainable only by their fraudulent joinder,</u> **and, as per *Smallwood's* guidelines, virtually *inviting* the Court's use of a "pierce-the-pleadings" procedure.**

**(19)   The Magistrate erred in being  mislead into relying on defendants' exclusive, and plaintiffs maintain, misleading, citation of  "transparently fraudulent and relatively rare "Latter Day Canter" cases.**

　　　As reflected by  the Magistrate's own reference in its Report to yet another case "Latter day Canter" type case as if it were the only type of "executive officer

---

[24] Especially if a plant blows up or fumigates a local community or pollutes a fishing ground but suing an employee in this manner.  But suing someone and staying in court are two different matters, and it is rare that the employee sued in such a case will be the person, if any, who is responsible for some single incident like these.  Yet this is the intentional tort claim the Magistrate has held <u>was</u> viable and that the negligence claims against Mr. Sims' own plant managers and safety directors is the case labeled fraudulent.   <u>This just does not make sense.</u>

case there is "1976," "employee," or "employer."  There is no indication of the Magistrate's awareness of the onerous duties delegated to these men under LSA R.S. 23:13 or OSHA, etc. as reflected in the *applicable* jurisprudence (see the more detailed discussion found in the attached Affidavit (attached as Exhibit A)). This is reflected by the complete absence of even one citation of *Cole* or any of the far more numerous "Real" executive officer cases filed after *Cole* was decided and whose allegations are typically based on those in *Cole* since: Although such cases are not legally pertinent  to plaintiffs' "Real" *Cole v. Celotex* based negligence claims (except for their potentially confusing remote common ancestor in *Canter*), such cases could only have been  mistakenly cited by the Magistrate as the result of confusing  the two types of "executive officer cases," hopefully, we have, just distinguished.

**(20)    The Magistrate erred, since, as set forth, and for reasons more fully discussed in the attached Affidavit, in violation of the "Erie doctrine," its finding that plaintiffs' petition does not state a cause of action in executive officer negligence is completely at odds with every reported decision in Louisiana's well developed law addressing the question.**

As reflected on the attached Affidavit (Exhibit A), no Louisiana Appellate Court has ever upheld a single grant of Exceptions of No Cause of Action and only rarely even held such petitions even to be unduly vague or ambiguous (and all of which are more, and some far more, deficient in terms of the ambiguity/ vagueness criteria for stating a cause of action suggested by defendants and adopted in the Magistrate).

**(21)    In violation of the "Erie doctrine," the Magistrate erred in concluding that plaintiffs have no viable cause of action against the Louisiana residents because plaintiffs' petition does indeed state a cause of action in**

**executive officer negligence under Louisiana's well developed *applicable* law on the subject.**

As set forth more fully in the attached Affidavit (attached as Exhibit A), the allegations made in the vast majority, if not virtually all, of the thousands of "Real" executive officer cases filed in this state since *Cole v. Celotex* was decided have and, confusingly, even some of the, at most, few dozen "Latter Day Canter" cases – the only type of *reported* executive officer case that has ever been removed employed allegations based on those in the *Cole* petition – specifically *including* undifferentiated collective references to "the executive officers" involved.  Defendants cannot show the Court even one petition that contradicts this claim.[25]

As reflected in the attached Affidavit (attached as Exhibit A), there is not a single *published* opinion in the entire jurisprudence of this state addressing whether any executive officer petition adequately stated a cause of action - or even whether it was impermissibly vague or ambiguous: (1) in which the petition at issue did not contain allegations employing undifferentiated collective references to "the executive officers" involved, and even (2) in which the Court *itself* did not employ such collective allegations.[26]

 **(22)   The Magistrate erred in concluding that the Sims' petition does not state a cause of action is contrary to the "Erie doctrine," and its adoption by this Court, would violate plaintiffs' right to due process.**

---

[25] Except for the petition in this case – see ¶12, ignored by the defendants and, unfortunately – probably as a result – also by the Magistrate.

[26] In fact, of the many cases addressing a failure to state a cause of action, not one opinion in these cases *individually* discusses the allegations made against even one *particular* executive officer, as the Courts routinely *do* discuss in deciding Motions for Summary Judgment or addressing findings of liability on appeal.

At the time plaintiffs' petition was filed in state court, there was not even the slightest basis for even *predicting* that plaintiffs' petition would be found <u>not</u> to state a cause of action by any Louisiana district or appellate court, for reasons previously stated and as set forth in the attached Affidavit (attached as Exhibit A). The vast majority, if not all, contain collective references to "the executive officers."[27] As reflected in the many Louisiana cases discussing allegedly deficient executive officer petitions discussed in the Affidavit (attached as Exhibit A) and reflected in the attached exhibits, many petitions that were specifically held to state a cause of action were far more deficient in terms of ambiguity or vagueness than the petition in this case.

**(23)    The Magistrate erred in mistakenly relying on what plaintiffs refer to as defendants' ambiguity based "criteria" for stating a cause of action.**

Set forth in part two of defendants' Notice of Removal (at ¶ 12i-12j) entitled, "*Plaintiffs' Boilerplate Allegations Do Not State A Cause Of Action Against The Louisiana So Called Executive Officers*" and none of which, as reflected in the attached Affidavit (attached as Exhibit A), have any precedent in Louisiana law (even with regard to vagueness).

**(24)    Even if the Magistrate did not rely on the defendants' ambiguity based "criteria" for stating a cause of action, the Magistrate did in fact err in equating what is at most ambiguity in plaintiffs' petition with a failure to state a cause of action, in violation of the Erie Doctrine.**

---

[27] Plaintiffs counsel has never seen one that even had the differentiation provided by ¶12 in plaintiffs' petition and challenge defendants to show the Court even one that does.

The Magistrate's holding that, in effect, because plaintiffs' petition employs collective references to the executive officers identified above,[28] it is necessarily fatally *ambiguous*, this raises an obvious question: If defendants' vagueness/ambiguity criteria adopted by the Magistrate truly applies to stating a cause of action, **what *remaining* role would *real* Exceptions of Vagueness or Ambiguity (or its Federal equivalents) even *have*?**

**(25)   Even if the Magistrate did not err in applying criteria for ambiguity of vagueness in evaluating whether plaintiffs' petition states a cause of action, it did err in holding plaintiffs' petition *fatally ambiguous* since plaintiffs' petition is <u>not</u> unduly vague or ambiguous  and conforms with those criteria anyway.**

Plaintiffs' petition is not ambiguous anyway since paragraph 12 of plaintiffs' petition, ignored by defendants and presumably unnoticed by the Magistrate specified who did what and why with regard to "the executive officers Identified above" or "the executive officers identified as intentional tortfeasors," etc. in paragraphs *following* paragraph 12.   Plaintiffs' allegations are broad because they need to be in order to accurately allege the broad range of misconduct committed by the managerial upper level safety personnel involved.

**(26)   The Magistrate erred in rejecting *King v Dow* as the most clearly applicable precedent imaginable for the remand of this case.**

For reasons discussed in the attached Affidavit (Exhibit A) even under weaker facts than those present in that case (Mr. King was "mere" contractor employee and not a direct employee like Mr. Sims) Judge Polozola found that

---

[28] Honestly, it is not what is so "generic" (or whatever vagueness, ambiguity it is that supposedly renders out petition *"fatally" ambiguous*) then we <u>still</u> have not guessed what defendants mean by the incited "criteria" they set forth in ¶12(h)-(j) of their Notice of Removal, some or all of which seem to have been adopted by the Magistrate.

defendants had not met their heavy burden of establishing that plaintiffs' claims against the non-diverse executive officers were fraudulent.  The Magistrate considered the mere *possibility* that Judge Polozola might have been referring to Mr. King's direct (as opposed to statutory) employer as good reason to reject this otherwise clearly applicable authority for remand*is by no means an example of construing any ambiguity in the applicable law in favor of finding plaintiffs' petition to state a cause of action.

**(27)  The Magistrate erred in relying   on the outrageous unsworn misrepresentations of fact and law set forth in part one of the argument in defendants' Notice of Removal entitled, "Plaintiffs' Experts Have Found No Basis For Liability on The Part of the Louisiana 'Executive Officers'" (at ¶ ¶ 12a-12h).**

The true facts relating to defendants' claims are set forth in the attached Affidavit (attached as Exhibit A).   However, a simple examination of plaintiffs' petition will reveal (a) that *its reference to "plaintiffs' experts," by its own terms, had nothing to do with plaintiffs' allegedly fraudulent executive officer negligence claims* but rather related to the alleged conspiracy and (b) Plaintiffs' counsel did not by any means "*adopt*" their (non-existent) opinions about *anyone's* negligence.  As shown in the attached Affidavit (attached as Exhibit A), literally every representation of fact and law contained in paragraphs   12(b)-(g) of defendant's Notice of Removal is either false or misleading and serves no better purpose than to serve as the fraudulent premise for defendants'   ridiculous

argument for application of the   totally inapplicable[29] doctrine of judicial estoppel.[30]

**(28)   The Magistrate erred in finding that plaintiffs' petition contains purely conclusory allegations of fact.**

Plaintiffs did not simply, for example, merely allege that Mr. Sims was injured as a result of the executives' "failure to provide him with a safe place to work."   That might at least truly be conclusory, although <u>never</u> fatally so.  That's <u>what exceptions of vagueness are for</u>.  However, as a simple examination of the petition will reveal, it does in fact allege specific delegated duties breached by the executive officers that caused Mr. Sims' injury.

**(29)   Even if ¶ 12 of plaintiffs' petition did not provide greater specificity to what the Report refers to as "general allegations" than can be found in any reported, or even any unreported, executive officer case that anyone will ever be able to show the Court, the Magistrate nevertheless erred in finding that plaintiffs' petition to be comprised entirely of (fatally) conclusory allegations.**

*Even without regard to* ¶12 of plaintiffs' petition, had the Magistrate accepted plaintiffs' supposedly "undifferentiated" allegations as true, they would have been interpreted as demonstrating viable claims that *all* of the executive officers breached *all* of the delegated duties they are alleged to have breached – and that interpretation would be just about accurate since virtually all of the executive officers did have and did breach the broad range of duties they are alleged to have breached..

---

[29] At least in this State.
[30] The basis for all this set forth in  the Notice at ¶12h that (4)  the magistrate erred in adopting

**(30)    The Magistrate erred in finding that defendants' Notice of Removal actually gave plaintiffs any real notice, as required by due process, of the basis for its fraudulent joinder claim.**

As explained in the attached Affidavit (attached as Exhibit A), excluding the demonstrably and completely *false*  unsworn assertions of fact concerning "plaintiffs' experts" set forth in ¶¶ 12b-h and   supposedly supporting the inapplicable doctrine of judicial estoppel - *the entirety of  the supposed basis for removal set forth in that  Notice (¶¶ 12i-k) sets forth not one fact, including any particular  alleged deficiency in plaintiffs' petition*  Instead it simply labels  that petition, in its entirety, as fatally ambiguous.

Plaintiffs finally determined that (really still just a best guess) what defendants, and now the Magistrate, found so fatally ambiguous, "generic" or whatever was in fact nothing more than plaintiffs collective referral to the "executive officers identified above" in several paragraphs following paragraph 12.   This is at best an ambiguity, and one that could have been avoided by reading those supposedly "fatally ambiguous" allegations *in prima material* <u>with</u> paragraph 12.   The fact that we might be wrong in guessing what the fatal deficiencies in their petition is only illustrates how inadequate and conclusory and vague defendants' Notice of Removal actually is.   Paragraphs 12(b)-(j) of defendants' Notice could be used "generically" to deprive <u>any</u> executive officer case in this state without changing a word.  This is fundamentally unfair.

**(31)  The Magistrate's employment of a "pierce-the-pleadings" was improper under the guidelines established in *Smallwood.***

The Magistrate in its Report at least *seems* to find that plaintiffs' petition *did* allege a viable cause of action in **negligence** and <u>there was no showing, and</u> <u>the magistrate neither found nor even gave any examples of allegations that</u> <u>could be interpreted as supporting a finding, of **actual fraud in the pleading of**</u> **<u>material jurisdictional facts.</u>**

**(32)  If the Magistrate's erroneous recommendation is adopted by this Court, <u>it will be the first time</u> that any pre-1976 case based on, and with a petition directly based upon both *Canter <u>and</u> Cole* has *ever* been held not to state a cause of action in the history of this State and such an adoption would violate not only the Erie Doctrine, but also the entire idea of a judicial system based upon *applicable* precedent.**

The attached Affidavit (attached as Exhibit A) of plaintiffs counsel and exhibits establishes the following facts:

(1)     That the **undersigned counsel's law firm previously represented the plaintiffs** and still possesses many of the petitions filed in:(a) *Canter v Koehring,* the leading *pre*-1976 executive officer case in the state *and* relied on by the Magistrate*; (*b) *Cole v Celotex,* the leading in *post*-1976 executive officer case that was ignored by defendants and, probably as a result, not considered by the Magistrate; (c) ***At least 1,500 executive officer  cases,*** 943 of which were specifically held to state a cause of action under a "Standing Order" adopted  by 7 Judges in the 14th JDC and left intact even after writs were granted by the Supreme Court;

(2)     **The petition from the *Cole* case,** upon which the one at issue in this case and in the previously remanded *King* case was derived,  was previously widely disseminated to lawyers all over this state and **was subsequently**

**employed as a model in the vast majority, if not near literally *all, of the reported executive officer cases  reflected in the jurisprudence*** of  this state [*including many ruling on Exceptions of No Cause of Action with regard to petitions that are attached as Exhibits for purpose of comparison*] as well as in many thousands of unreported cases;

(3)    **Not one petition based on *Canter* <u>and</u> *Cole*** - i.e., petitions employed in *thousands* of cases, the *only type* addressed reported in *Louisiana's* published jurisprudence, based on causes of action against the executive officers of a plaintiffs' *employer* that accrued before but were filed after 1976 - **can *ever* be shown to have ever been unsuccessful on the merits or to have been held *not* to state a cause of action by any state or federal court**, and only a few even held to have even been vague;

(4) **Because such rare "*Canter but not Cole*" cases** *are* near universally transparently fraudulent, they are *almost* the only type of so-called executive officer cases ever *seen* by a Federal Court and *certainly **are* the only type addressed in any reported *Federal* opinion**, **there is** – at least we see now- a **great potential for confusion** on the part of the federal courts in assessing the petitions used in, or the merits of, the far more common cases like this one, based upon both *Canter* <u>and</u> *Cole;*

Respectfully submitted,

BAGGETT, McCALL, BURGESS, WATSON & GAUGHAN

 S/ William B. Baggett, Jr.
WILLIAM B. BAGGETT, #2650

WILLIAM BAGGETT, JR., #1217)
3006 Country Club Road (70605)
Post Office Drawer 7820
Lake Charles, LA  70606-7820
Telephone: (337) 478-8888
Facsimile:   (337) 479-1658

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been served on all known counsel of record via LAMD's Notice of Electronic Filing on this the 6TH day of February, 2009.

 S/ William B. Baggett, Jr.
WILLIAM B. BAGGETT, JR.