## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOHN SIMS and JOANNE SIMS,** | : | |
| | : | |
| **Plaintiffs,** | : | **NO. 08-612-RET-SCR** |
| | : | |
| **VERSUS** | : | |
| | : | |
| **THE DOW CHEMICAL COMPANY, THE** | : | |
| **AMERICAN INSURANCE COMPANY,** | : | |
| **ASSOCIATED INDEMNITY** | : | |
| **CORPORATION, THE HOME** | : | |
| **INSURANCE COMPANY, and** | : | |
| **TRAVELERS CASUALTY AND SURETY** | : | |
| **COMPANY, LARRY D. ADCOCK,** | : | |
| **MORTIMER CURRIER, GERARD W.** | : | |
| **DAIGRE, CHARLIE MELANCON,** | : | |
| **THEOPHILE ROZAS,** | : | |
| | : | |
| **Defendants.** | | |

### MOTION FOR ENTRY OF PROTECTIVE ORDER AND INITIAL CASE MANAGEMENT ORDER LIMITING DISCOVERY TO ISSUES OF GENERAL MEDICAL CAUSATION

NOW INTO COURT, through undersigned counsel, comes The Dow Chemical Company ("**Dow**"), The American Insurance Company, as indemnified by The Dow Chemical Company, Associated Indemnity Corporation, as indemnified by The Dow Chemical Company, and Travelers Casualty and Surety Company, as indemnified by The Dow Chemical Company (collectively referred as the "**Insurer Defendants**"), who respectfully move this Court for a protective order and/or a case management order isolating and front loading the issue of general medical causation for discovery and dispositive motion practice, all as more fully discussed in the attached memorandum in support, and for the following reasons:

1.

Plaintiffs in this matter contend that Johns Sims contracted glioblastoma multiforme (a type of brain cancer) due to vinyl chloride exposure allegedly sustained while he was employed at Dow's chemical manufacturing facility from 1969 until 2000.

2.

Substantial, authoritative medical literature demonstrates that there is no general medical causation between vinyl chloride exposure and the development of glioblastoma multiforme. See Exhibits "A", "B", "C", "D" and "E". Thus, general medical causation is genuinely disputed by defendants.

3.

Dow and the Insurer Defendants suggest and propose that the most expeditious and cost effective way to proceed with discovery and dispositive motion practice is to address general medical first, ie. can vinyl chloride exposure cause glioblastoma multiforme.  Scientific causation is a predominant threshold issue in this action that has a substantial likelihood of being dispositive, and therefore should be the subject of a limited, first phase of discovery and dispositive motion practice.  This approach has been recognized and adopted by the Court in other cases.  See, ***Dickson v. Honeywell International***, Number 05-1349, JJB –SCR, Document Number 57, attached as Exhibit "F.

4.

The issue of general medical causation is proper for a limited, first phase of discovery.  If the threshold is not crossed by plaintiffs, the plaintiffs cannot establish their burden of proof and all other issues are moot.  Entry of a case management order isolating discovery on the issue of general medical causation as a first phase of discovery provides for expedited discovery  and dispositive motion schedule on this issue and saves substantial resources that would undoubtedly be expended on unlimited, general discovery in this case that ranges beyond the threshold issues that must be crossed by plaintiffs.

5.

Dow and the Insurer Defendants propose entry of the following scheduling order pursuant to Fed. R. Civ. Proc.16 degree of medical probability is the cause of injury, harm or condition sustained by:

1. By **May 31, 2009**, Plaintiffs shall produce a report (or reports, if necessary) from an expert (or experts, if necessary) expressing their opinion or opinions regarding the general causation of the injuries sustained by John Sims.  The report(s) shall fully comply with the provisions of Rule 26(a)(2)(B).  As to each illness injury, harm or condition claimed by plaintiffs, the report(s) must identify the basis for concluding that exposure to vinyl chloride to a reasonable y plaintiff.

2. Prior to **July 15, 2009**, Plaintiffs shall make all experts who issued a report available for a deposition.

3. Defendants shall file dispositive and *Daubert* motions on the issue of general medical causation on or before August 10, 2009, including exchanging any expert reports or affidavits that they will submit in support of a motion for summary judgment..

4. Prior to August 31, 2009, Defendants shall make all experts who issued a report available for a deposition.

5. Plaintiffs shall file an opposition to the Defendants' motion for summary judgment and any *Daubert* motions by September 30, 2009.

6. Except as provided above, all discovery shall be stayed pending a ruling on defendants' dispositive and **Daubert** motions filed on the issues of general medical causation.

7. If the motions are denied, a status conference will be assigned to enter further case management orders.

6.

Pursuant to Fed. R. Civ. Proc. 26, counsel for plaintiffs has been contacted and provided a draft of the motion.  Plaintiffs oppose the proposed CMO.  Counsel for plaintiffs requested that his email to undersigned counsel be attached as his objection, which is attachment "G".

WHEREFORE, The Dow Chemical Company and the Insurer Defendants, pray that this Honorable Court issue the proposed protective order and/or case management order to facilitate the expeditious, economical and just resolution of this case.

492004.1

Respectfully submitted,

TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P

By /s *David Bienvenu*
   David M. Bienvenu, #020700
   Lexi Holinga, #030096
   451 Florida Street, 8th Floor
   P.O. Box 2471
   Baton Rouge, LA 70801/70821
   Phone: (225) 387-3221
   Fax: (225) 346-8049

   Counsel for *The Dow Chemical Company*

By /s *F. Charles Marionneaux*
   F. Barry Marionneaux, #09277
   F. Charles Marionneaux, #18320
   MARIONNEAUX & MARRIONEAUX,
   APLC
   23615 Railroad Avenue
   Plaquemine, LA  70764
   Telephone:  (225) 687-6884
   Facsimile: (225) 687-6886

   Counsel for *The American Insurance Company, as indemnified by The Dow Chemical Company, Associated Indemnity Corporation, as indemnified by The Dow Chemical Company, and Travelers Casualty and Surety Company, as indemnified by The Dow Chemical Company.*

- 5 -

- CERTIFICATE -

I certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this 17t$^{th}$ day of April, 2009.


**/s David Bienvenu** _____
David M. Bienvenu

492004.1

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN SIMS and JOANNE SIMS, | : | |
| | : | |
| **Plaintiffs,** | : | NO. 08-612-RET-SCR |
| | : | |
| VERSUS | : | |
| | : | |
| THE DOW CHEMICAL COMPANY, THE | : | |
| AMERICAN INSURANCE COMPANY, | : | |
| ASSOCIATED INDEMNITY | : | |
| CORPORATION, THE HOME | : | |
| INSURANCE COMPANY, and | : | |
| TRAVELERS CASUALTY AND SURETY | : | |
| COMPANY, LARRY D. ADCOCK, | : | |
| MORTIMER CURRIER, GERARD W. | : | |
| DAIGRE, CHARLIE MELANCON, | : | |
| THEOPHILE ROZAS, | : | |
| | : | |
| **Defendants.** | | |

## CASE MANAGEMENT ORDER NO. 1:

Pursuant to Fed. R. Civ. Proc. 16 and 26(c), the Court enters the following case management and scheduling order, the purpose of which is to facilitate expedited and limited discovery on the issue of general causation so that the case can reach a posture where the Court can consider the threshold issue of general causation:

1. By **May 31, 2009**, Plaintiffs shall produce a report (or reports, if necessary) from an expert (or experts, if necessary) expressing their opinion or opinions regarding the general causation of the injuries sustained by John Sims.  The report(s) shall fully comply with the provisions of Rule 26(a)(2)(B).  As to each illness injury, harm or condition claimed by plaintiffs, the report(s) must identify the basis for concluding that exposure to vinyl chloride to a reasonable degree of medical probability is the cause of injury, harm or condition sustained by plaintiff.

2. Prior to **July 15, 2009**, Plaintiffs shall make all experts who issued a report available for a

deposition.

3.  Defendants shall file dispositive and **Daubert** motions on the issue of general medical causation on or before August 10, 2009, including exchanging any expert reports or affidavits that they will submit in support of a motion for summary judgment..

4.  Prior to August 31, 2009, Defendants shall make all experts who issued a report available for a deposition..

5.  Plaintiffs shall file their opposition to the Defendants motion for summary judgment and any **Daubert** motions by September 30, 2009.

6.  Except as provided above, all discovery shall be stayed pending a ruling on Defendants' dispositive and **Daubert** motions filed on the issues of general medical causation.

7.  If the motions are denied, a status conference will be assigned to enter further case management orders.

Baton Rouge, Louisiana, this _____ day of April, 2009.


_____
United States Magistrate Judge

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN SIMS and JOANNE SIMS, | : | |
| | : | |
| Plaintiffs, | : | NO. 08-612-RET-SCR |
| | : | |
| VERSUS | : | |
| | : | |
| THE DOW CHEMICAL COMPANY, THE | : | |
| AMERICAN INSURANCE COMPANY, | : | |
| ASSOCIATED INDEMNITY | : | |
| CORPORATION, THE HOME | : | |
| INSURANCE COMPANY, and | : | |
| TRAVELERS CASUALTY AND SURETY | : | |
| COMPANY, LARRY D. ADCOCK, | : | |
| MORTIMER CURRIER, GERARD W. | : | |
| DAIGRE, CHARLIE MELANCON, | : | |
| THEOPHILE ROZAS, | : | |
| | : | |
| Defendants. | | |

## MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF PROTECTIVE ORDER AND INITIAL CASE MANAGEMENT ORDER LIMITING DISCOVERY TO ISSUES OF GENERAL MEDICAL CAUSATION

The Dow Chemical Company ("**Dow**"), The American Insurance Company, as indemnified by The Dow Chemical Company, Associated Indemnity Corporation, as indemnified by The Dow Chemical Company, and Travelers Casualty and Surety Company, as indemnified by The Dow Chemical Company (collectively referred as the "**Insurer Defendants**"),  file this memorandum in support of their Motion for Protective Orders and/or Case Management Order to facilitate the expeditious, economical and just resolution of this case.

## I.      FACTUAL AND PROCEDURAL HISTORY

On August 25, 2008, plaintiffs filed this suit for damages joining Dow, the Insurer Defendants and several alleged "executive officers" as defendants.  The suit was removed to federal court by defendants.  Plaintiffs vigorously fought to have the case remanded to state court.  The motion to remand has been denied and subject matter jurisdiction has been

- 1 -

established by the defendants.

Plaintiffs' petition, read as a whole, alleges that from 1969 through 2000, John Sims was exposed to vinyl chloride while employed by Dow and allegedly developed brain cancer as a result of his employment at Dow. In this regard, the petition alleges that Mr. Sims was exposed to vinyl chloride though his work as an operator at the Vinyl 1 unit for approximately 10 years.[1] Mr. Sims then allegedly worked as an instrument man at Dow for the rest of his career.[2] The claims asserted in the suit are identified in some detail by this Court's Report and Recommendation denying plaintiffs' motion to remand.[3]

## II. A PRETRIAL CASE MANAGEMENT ORDER LIMITING THE SCOPE OF DISCOVERY TO GENERAL MEDICAL CAUSATION IS APPROPRIATE IN THIS MATTER.

### A. Fed. R. Civ. Proc. 16 Provides for the Orderly and Efficient Management of Cases.

Fed. R. Civ. Proc. 16 provides the Court with broad discretion to fashion scheduling and case management orders that "expedite the disposition of the action" and discourage "wasteful pretrial activities." Fed. R Civ. Proc. 16(a). In so doing, Rule 16 permits the Court to fashion case management or pretrial orders that:

(1)    Eliminate frivolous claims.

(2)    Bring ***Daubert*** issues to the surface.

(3)    Manage the appropriateness and timing of summary adjudication under Rule 56.

(4)    Facilitate the just, speedy and inexpensive disposition of

---

[1] Petition, ¶ 7 .

[2] Id.

[3] Docket Number 29.

- 2 -

492004.1

the action.

As demonstrated below, isolating the issue of "general causation" for a first phase of limited discovery and motion practice accomplishes these goals.

    **B.    The Issue of General Causation Is a Threshold Issue That Must Be Crossed By Plaintiffs.**

Regardless of the theory of liability asserted, plaintiffs bear the burden of proving the threshold issue of medical causation; i.e., that the injuries, brain cancer, could in fact be caused by exposure to vinyl chloride. The possibility of causation supported by speculation and conjecture does not constitute competent "cause in fact" proof. *Todd v. State, through Social Services*, 96-3090 (La. 9/9/97), 699 So.2d 35, 42. Cause in fact, which requires proof by a preponderance of the evidence, requires proof as to what probably happened as opposed to what "could" have happened and what is a "statistical possibility." Proof which establishes only possibility, speculation, or unsupported probability does not suffice to establish a negligence claim. *Perkins v. Entergy Corp.*, 98-2081 (La. App. 1 Cir. 12/29/99), 756 So.2d 388, 407.

In toxic tort cases, "general causation" refers to whether a substance is capable of causing a particular injury or condition in the general population, while "specific causation" refers to whether a substance caused a particular individual's injury. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). Plaintiff's failure to prove causation requires the entry of summary judgment. *Trent v. PPG Industries, Inc.*, 05-989 (La. App. 3 Cir. 2006), 930 So.2d 324. More generally, plaintiff must at least establish through reliable toxicology that vinyl chloride is a chemical proven to be capable of causing brain cancer at some dose. *Creel v. Southern Natural Gas Co.*, 2003-2761 (La. App. 1st Cir. 2005) 917 So.2d 491, 499.

Under Louisiana law, plaintiffs bear the burden of proving their claims against each of the defendants they have chosen to sue. This includes proving that Mr. Sims alleged exposure in

- 3 -

the workplace caused his brain cancer.  Dow submits that plaintiffs cannot meet their burden of proving that Mr. Sims' brain cancer was caused by exposure to vinyl chloride or any other chemicals for that matter.

**C. Extensive Scientific Research Contradicts Plaintiffs' Allegations That Vinyl Chloride Causes Glioblastoma Multiforme**.

The International Agency for Research on Cancer (IARC) is an arm of the World Heath Organization (WHO).  Its role is to conduct and coordinate research into the causes of cancer.  It both reviews independent research and conducts its own original research.  It reports its results in a series of monographs on the carcinogenic risks to humans posed by a variety of agents, mixtures and exposures.  (*See generally*, http://www.iarc.fr/.)

In 2008, the IARC published a monograph reviewing the totality of the vinyl chloride epidemiology, toxicology and mechanistic scientific literature to date.  Its 133-page report, on vinyl chloride IARC MONOGRAPHS ON THE EVALUATION OF CARCINOGENIC RISKS TO HUMANS (Vol. 97 update (2008)), is attached herein as **Exhibit A** (*see* pp. 311-443).  As is readily apparent from a review of the IARC monograph, there is a substantial body of literature relating to vinyl chloride.  The list of references alone is 18 pages in length and consists of 292 separate studies and reports.  (*See* **Exhibit A**, at pp. 426-43.)  The IARC report reviewed, analyzed and summarized the epidemiological evidence relating to vinyl chloride.  Epidemiology is the study of the incidence of disease in human populations.  Epidemiologists analyze the incidence of disease in certain study groups – called cohorts – of similarly situated individuals as compared with those individuals' counterparts in the general population.  If the incidence of disease is significantly higher in a study cohort as compared with what would be expected in a general population, then epidemiologists may conclude that there is an *association* between a common characteristic of the cohort – e.g., occupational exposure to a chemical – and the disease. Association, however, is not *causation*, and scientists will not necessarily conclude that elevated

- 4 -

incidence of the disease in the cohort equates to a causal relationship unless and until a number of other criteria are met. (*See generally* Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE (2000) ("Federal Manual") at pp. 335-37).

The IARC's 50-page review of the vinyl chloride epidemiology analyzed scores of reports of cancer in humans exposed to vinyl chloride, including two large studies of vinyl chloride workers, one in North America and one in Europe. (*See* **Exhibit A**, at pp. 323-72.) The North American cohort consists of over 10,000 workers in 37 plants. The European cohort consists of 12,000 European vinyl chloride workers in plants in a number of Western European countries. As a result of this comprehensive review and analysis, the IARC reported that although vinyl chloride may cause certain liver cancers, it **"did not find strong epidemiological evidence for associations of vinyl chloride with cancers of the brain."** (*See* **Exhibit A**, at p. 423.)

Key to the IARC's findings were its analysis of the two large vinyl chloride worker cohorts which were analyzed extensively in 2003. In 2003 Paolo Boffetta, one of the IARC's top researchers, published the results of a meta-analysis of the existing data. A meta-analysis is in essence a combining of data from other studies in order to increase the statistical power of the data and increase confidence in the conclusions. (*See* Federal Manual at p. 393.) The IARC researchers combined and analyzed the data from a total of eight independent studies, including the latest studies of the North American and European worker cohorts discussed above. This meta-analysis found **"a lack of increase in brain cancer risk."** (*See* Boffetta, et al., *Meta-analysis of Studies of Occupational Exposure to Vinyl Chloride in Relation to Cancer Mortality* 29(3) SCAND J WORK ENVIRON HEALTH 220-229 (2003), attached herein as **Exhibit B**, at p. 225.)

Also in 2003 another IARC researcher, Christine Bosetti led a review of the epidemiological evidence to date and reached similar conclusions regarding brain cancer. The authors reviewed the data from the North American and European cohorts and additional Asian studies and concluded, essentially, that only ASL is causally related to occupational exposure to vinyl chloride and that the data from the cohorts exclude any excess mortality from other types of cancer. Bosetti concluded that overall, this case-control analysis **"did not indicate an association between brain cancer and vinyl chloride exposure."** (*See* Bosetti, et al., *Occupational Exposure to Vinyl Chloride and Cancer Risk: a Review of the Epidemiologic Literature* 12(5) EUR. J. CANCER PREV. 427-430 (2003), attached herein as **Exhibit C**, at p. 430.)

The 2008 IARC report discussed above also reviewed and analyzed the body of scientific literature regarding vinyl chloride-exposed laboratory animals. Toxicology involves exposing laboratory animals to various doses of chemicals, while controlling other variables, in order to study effects on various organs and tissues, to understand dose-exposure relationships, and to understand the mechanisms by which certain agents induce tumors. (*See* Federal Manual at pp. 403-10.)

In its section on "Cancer in Experimental Animals," relative to vinyl chloride toxicology literature, the IARC did not report any significant findings with regard to brain tumors. (*See* IARC MONOGRAPHS, *supra*, **Exhibit A**, at pp. 423-24.)

In its section on "Mechanistic and Other Relevant Data," the IARC stated: "**In rats exposed to vinyl chloride, increased levels of ethno adducts [*i.e.*, evidence of vinyl chloride damage] have been found in different organs such as the liver, lung and kidney and in lymphocytes, but not in the brain.**" (*See* IARC MONOGRAPHS, *supra*, **Exhibit A**, at pp. 424.)

In addition to the IARC, a number of leading experts have reviewed the totality of the human epidemiological data and the animal toxicological data and have concluded that there is

- 6 -

no evidence to link vinyl chloride exposure with brain cancer.  For example, the Brain Tumor Epidemiology Consortium (BTEC) of the National Cancer Institute (NCI) is an open forum for the sharing and coordination of research among brain cancer epidemiology specialists at leading institutions in the U.S. and Europe.  (*See* http://epi.grants.cancer.gov/btec/.)   The BTEC conducted a collaborative review on the part of sixteen of its members, all leading brain cancer researchers, and published its results in 2008.  *See* Bondy, et al., *Brain Tumor Epidemiology: Consensus from the Brain Tumor Epidemiology Consortium* CANCER SUPP., Vol 113 No. 7, pp. 1953-68 (Oct. 1, 2008), attached herein as **Exhibit D**.

The BTEC scientists conducted an extensive review of the scientific literature over several decades relating to brain cancer and a number of postulated causes, citing 195 references. As a result of their collaborative effort, the authors concluded that:  **"Despite decades of research, the only environmental agent that is associated conclusively with [brain tumor] risk is ionizing radiation."**  *See* **Exhibit D**, at p. 1960.

As another example, Faith Davis, a leading expert in brain cancer epidemiology at the University of Illinois and Bridget McCarthy a brain cancer epidemiologist at the University of Illinois and the Principal Investigator at the North American Association of Central Cancer Registries Central Brain Tumor Registry of the U.S., also conducted an extensive review of the existing scientific literature relating to brain cancer.  They published their results in a leading medical treatise on brain and central nervous system cancers.  *See* Davis and McCarthy, *Epidemiology of Brain Tumors*, in RUSSELL AND RUBENSTEIN'S PATHOLOGY OF TUMORS OF THE NERVOUS SYSTEM; Darell Bigner, et al., eds. (2006 ed.), attached herein as **Exhibit E**.

These authors reviewed cited 517 independent studies and reports.  *See* **Exhibit E**,  at p. 36-49 (listing references).  On the basis of their review, they concluded:  **"This combined re-evaluation of the human and animal data argue against a causal relationship for vinyl**

- 7 -

chloride in the development of primary central nervous system tumors." *See* **Exhibit E**, at p. 31.

Whether vinyl chloride exposure may cause brain cancer has been thoroughly researched and reported upon by the world's leading scientists. Whether vinyl chloride exposure may cause brain cancer is outcome determinative in this case. A scheduling order requiring discovery on the issue of general causation followed by determination of the issue in this case

### D.    Federal Courts Regularly Utilize Case Management Orders That Frontload and Isolate General Medical Causation For A First Phase Of Discovery.

Federal courts have employed similar pretrial orders commonly referred to as "Lone Pine" orders. Faced with superficial allegations combined with the technical nature of trying a toxic tort case and the significance of mastering the voluminous materials that accompany such litigation, federal courts have created what is commonly referred to as the "Lone Pine" order, derived from the case *Lore v. Lone Pine Corp.*, No.L. 33606-85 (N.J. Super. Ct. Law Div. 1986). Often employed in toxic tort suits involving multiple plaintiffs and multiple defendants, the *Lone Pine* order focuses the case on the critical issues of each plaintiff's alleged exposure to contaminants and the alleged causation between defendant's emission and each plaintiff's alleged injuries, allowing the court to determine whether a *prime facie* case can be established against a defendant. *Acuna v. Brown & Root,* 200 F.3d 335 (5th Cir. 2000). Ultimately, a *Lone Pine* order separates those cases with meritorious claims from those with unfounded claims and saves enormous litigation and judicial resources, requiring nothing more than the information the plaintiffs are required to know under modern pleading rules, such as Fed. R. Civ. P. 11(b)(3), in advance of filing suit.

In *Acuna, supra,* the Fifth Circuit held that each plaintiff should have at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were

responsible for his injuries.  The Court in *Acuna,* issued a pre-discovery scheduling order requiring plaintiffs to provide evidence that their injuries were caused by the alleged uranium exposure and provide the scientific and medical basis for their experts' opinions on such.  *Id.* See also ***Eggar, et al v. Burlington Northern RR Co***. (D. Mont. 1991), 1991 WL 315487, *affirmed* in ***Claar v. Burlington Northern RR Co***., 29 F.3d 499 (9th Cir. 1994);  ***Schelske v. Creative Nail Design, et al,*** 280 Mont. 476, 933 P.2d 799 (Mont. Sup. Ct. 1997) (trial court entered a case management order requiring plaintiff, an ex-beautician, to provide defendants with a list of products, the circumstances of alleged exposure, and identification of each specific chemical which allegedly caused harm, and a physician's opinion of causal connection between exposure and injury).  The pretrial order requested herein is an effective case management tool for balancing the burdens imposed by such litigation.  This Court recognized and adopted Dow's plan in other cases.  See, ***Dickson v. Honeywell International***, Number 05-1349, JJB –SCR, Document Number 57, attached as Exhibit F.  Similar scheduling orders have been entered in the Eastern District of Louisiana as well.  (*See **In re Vioxx Prods. Liab. Litig.***, 2008 U.S. Dist. LEXIS 94092  (E.D. La. 2008) (upholding imposition of a similar scheduling order in toxic tort actions)

The discovery concerning fault on the part of Dow or its officers and exposures while at Dow's facility will be extremely time consuming and expensive.  Plaintiffs' petition asserts a multitude of factual allegations. Discovery concerning levels of exposure and/or acts or omissions occurring over a 30 year period of time in an industrial setting would be a colossal undertaking, requiring an enormous expenditure of resources to master voluminous materials. On the other hand, discovery on the limited issue of medical causation could be conducted in a brief discovery period, less than 120 days, for a fraction of the cost.  Essentially, the only discovery involved would be ascertaining the opinions of each party's general medical experts

and the basis of their opinions.  All necessary discovery on the limited issue of general medical causation could be conducted by all parties involved within 120 days from the date of the signing of a CMO.

Further, the entry of such a pretrial order would minimize the expense and effort associated with unnecessary discovery and would in no way prejudice plaintiffs' prosecution of their claims.  To prevail on his claims against Dow or Dow's executive officers, Mr. Sims bears the burden of proving all essential elements of his claims.  *Creel v. Southern Natural Gas Co.*, 2003-2761 (La. App. 1st Cir. 2005) 917 So.2d 491, 499; *Bowman v. City of Baton Rouge/Parish of East Baton Rouge,* 2002-1376, p. 5 (La. App. 1st Cir. 5/9/03), 849 So.2d 622, 626, *writ denied,* 2003-1579 (La. 10/3/03), 855 So.2d 315 (*citing Joseph v. Dickerson,* 99-1046, 99-1188 (La. 1/19/00) 754 So.2d 912, 916).  If plaintiffs cannot show vinyl chloride exposure can cause glioblastoma multiforme, then the case is finished and all parties will be saved the burden and expense of discovery on the remaining issues.  Conversely, if defendants' motions on medical causation are denied, all discovery conducted was necessary and the proceedings are streamlined focusing on the remaining elements of plaintiffs' claims.  Any inconvenience associated with the proposed discovery period is greatly outweighed by the potential cost savings associated with an early resolution of the issue medical causation.

### E.    Dow and the Insurer Defendants' Proposed Pretrial Order

The pretrial order proposed for this case requires plaintiffs to present their evidence concerning the issue of whether vinyl chloride causes brain cancer.  Once the brief, limited discovery period is completed, defendants will file their motion for summary judgment on the issue of general medical causation.  To conduct this discovery in a timely, efficient fashion, Dow proposes the following order:

- 10 -

492004.1

1. By **May 31, 2009**, Plaintiffs shall produce a report (or reports, if necessary) from an expert (or experts, if necessary) expressing their opinion or opinions regarding the general causation of the injuries sustained by John Sims.  The report(s) shall fully comply with the provisions of Rule 26(a)(2)(B).  As to each illness injury, harm or condition claimed by plaintiffs, the report(s) must identify the basis for concluding that exposure to vinyl chloride to a reasonable degree of medical probability is the cause of injury, harm or condition sustained by plaintiff.

2. Prior to **July 15, 2009**, Plaintiffs shall make all experts who issued a report available for a deposition.

3. Defendants shall file dispositive and *Daubert* motions on the issue of general medical causation on or before August 10, 2009, including exchanging any expert reports or affidavits that they will submit in support of a motion for summary judgment..

4. Prior to August 31, 2009, Defendants shall make all experts who issued a report available for a deposition..

5. Plaintiffs shall file their opposition to the Defendants motion for summary judgment and any *Daubert* motions by September 30, 2009.

6. Except as provided above, all discovery shall be stayed pending a ruling on Defendants' dispositive and **Daubert** motions filed on the issues of general medical causation.

7. If the motions are denied, a status conference will be assigned to enter further case management orders.

### III.    CONCLUSION

Federal courts routinely utilize pretrial orders as effective tools to manage discovery intensive litigation as the case at hand.  To facilitate the expeditious, economical and just resolution this matter, Dow and the Insurer Defendants pray that the Court enter a Case

492004.1

Management Order and/or Protective Order limiting the scope of discovery to medical causation.

The requested orders permits not prejudice the plaintiffs' prosecution of their claims.

**Respectfully submitted,**

**TAYLOR, PORTER, BROOKS & PHILLIPS L.L.P**

By  */s David Bienvenu*
   **David M. Bienvenu, #020700**
   **Lexi Holinga, #030096**
   **451 Florida Street, 8th Floor**
   **P.O. Box 2471**
   **Baton Rouge, LA 70801/70821**
   **Phone: (225) 387-3221**
   **Fax: (225) 346-8049**

   **Counsel for *The Dow Chemical Company***


By  */s F. Charles Marionneaux*
   **F. Barry Marionneaux, #09277**
   **F. Charles Marionneaux, #18320**
   **MARIONNEAUX & MARRIONEAUX,**
   **APLC**
   **23615 Railroad Avenue**
   **Plaquemine, LA  70764**
   **Telephone:  (225) 687-6884**
   **Facsimile: (225) 687-6886**

   **Counsel for *The American Insurance***
   ***Company, as indemnified by The Dow***
   ***Chemical Company, Associated Indemnity***
   ***Corporation, as indemnified by The Dow***
   ***Chemical Company, and Travelers***
   ***Casualty and Surety Company, as***
   ***indemnified by The Dow Chemical***
   ***Company.***

- 12 -

- CERTIFICATE -

certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this 17th day of April, 2009.

**/s David Bienvenu** _____
David M. Bienvenu

- 13 -

492004.1